**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DOUGLASS BRIDGEFORD, | |
| Plaintiff, | |
| v. | Civil Action No.: JKB-21-1386 |
| DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, et al., | |
| Defendants. | |

**MEMORANDUM OPINION**

Defendants Maryland Correctional Institution-Jessup ("MCIJ") and the Department of Public Safety and Correctional Services ("DPSCS") move to dismiss Plaintiff Douglass Bridgeford's complaint, or alternatively, for summary judgment in their favor. ECF No. 56.

Bridgeford subsequently made numerous filings: (1) Motion Under Local Rule 105.3 Under USCA 42 § 1983 ("Motion I"), ECF No. 59; (2) Motion Under Rule 12 Seeking Relief for Pain and Suffering and Abuse ("Motion II"), ECF No. 60; (3) Motion Under Rule 12 Entering Exhibits and Proof to Show Reckless and Careless Behavior ("Motion III"), ECF No. 61; (4) Motion to Disbarr [sic] Fraudulent Information ("Motion IV"), ECF No. 62; (5) Motion Under 42 § USCA 1983 Civil rights Violation Upon A.D.A. Inmate ("Motion V"), ECF No. 63. Thereafter, Defendants filed a Motion for Extension of Time to File a Reply along with their reply. ECF No. 64, 65.

No hearing is necessary to determine the matters pending. *See* Local Rule 105.6 (D. Md. 2021). For the reasons stated below, Defendants' motion, construed as a motion for summary judgment, will be granted. Further, Bridgeford's motions (Motions I through V) will be denied and Defendant's motion for an extension of time will be granted.

## I.  *Procedural and Factual Background*

### A. Bridgeford's Allegations

Bridgeford filed a complaint on June 4, 2021.[1] The case was dismissed without prejudice upon Bridgeford's motion to withdraw. ECF No. 47. The case was reopened on February 17, 2022, solely as to MCIJ on Bridgeford's Americans with Disabilities Act ("ADA") claim. ECF No. 50. The Court also added DPSCS as a defendant. *Id.*

Bridgeford was transferred to MCIJ on April 16, 2021, because he is hard of hearing and needed access to the Captioned Telephone translation phone service ("CapTel"), a service provided to deaf and hearing-impaired inmates.[2] ECF No. 1 at 1. However, he claims that as of May 20, 2021, "this staff has stopped all CapTel transaction on phone us[a]ge." *Id.* at 1, 2.

### B. Defendants' Response

Defendants filed a motion seeking dismissal of the Complaint or, in the alternative, summary judgment in their favor. ECF No. 56-1 at 3. Defendants explain that the complaint should be dismissed: (1) on the basis of Defendants' Eleventh Amendment immunity; (2) because Bridgeford has not exhausted his administrative remedies; and (3) because reasonable accommodations were provided when CapTel was out of service. *Id.*

---

[1] Bridgeford's filings can be erratic and difficult to discern. He has filed extensive correspondence and motions relating to his case. *See* ECF No. 12, 15–22, 23–34, 36, 38, 39, 43, 45, 46, 48, 49, 52, 53, 59–64. Further, Bridgeford is a frequent *pro se* litigant in this Court. A partial list of cases that he has filed in this District includes: *Bridgeford v. Douglas, et al.*, Civ. No. PJM-16-3570 (D. Md. 2016); *Bridgeford v. Folk, et al.*, Civ. No. PJM-16-3487 (D. Md. 2017); *Bridgeford v. Bretzler, et al.*, Civ. No. PJM-16-3078 (D. Md. 2016); *Bridgeford v. Odifie*, Civ. No. PJM-16-2454 (D. Md. 2017); *Bridgeford v. Carrington*, Civ. No. PJM-973 (D. Md. 2016); *Bridgeford v. Dovey*, Civ. No. PJM-15-1148 (D. Md. 2015); *Bridgeford v. Namiely*, Civ. No. PJM-13-495 (D. Md. 2013); *Bridgeford v. Foxwell*, Civ. No. PJM-17-1556 (D. Md. 2017); *Bridgeford v. Bohrer*, Civ. No. GLR-22-159 (D. Md. 2022); *Bridgeford v. P.R.I.S.M. Inc.*, Civ. No. DLB-22-471 (D. Md. 2022)

Nevertheless, the Court is mindful that Bridgeford is a pro se litigant and accords his pleadings generous construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (self-represented pleadings must be held to "less stringent standards than those by lawyers").

[2] As Defendants explain in their motion, CapTel is a telephone technology that provides captions of everything the caller says. ECF No. 56-1 at 5 n.2.

DPSCS Executive Directive OPS.200.0004 requires that reasonable accommodations be made to "remove barriers that prevent the individual from participating based on the individual's hearing disability." ECF No. 56-6 at 6. Furthermore, inmates with a hearing disability should receive reasonable accommodations to "provide written and oral communication in a manner or format that facilitates the inmate in understanding the message communicated." *Id.*

Assistant Warden at MCIJ, Geneva Holland, attests that the CapTel phone in housing unit D became inoperable on May 25, 2021. ECF No. 56-4 at ¶ 3 (Holland Decl.); ECF No. 56-5 at 1. On June 4, 2021, a technician responded to MCIJ's request for repairs, determined that there was no dial tone on the phone line, and contacted the carrier to remedy the issue. ECF No. 56-4 at ¶ 3. Holland avers that while the CapTel phone was inoperable, deaf and hard of hearing inmates were allowed to have a video visits. *Id.* at ¶ 4; *see also* ECF No. 56-5 at 1. On June 8, 2021, MCIJ was informed that the carrier servicing the phone line had changed and several attempts to contact the new carrier were made without success. ECF No. 56-4 at ¶ 5. The new carrier contacted MCIJ on June 21, 2021, to inform the facility that a technician would repair the phone line no later than June 25, 2021. *Id.* at ¶ 6. The phone line was repaired on June 24, 2021, and additional CapTel phone lines were requested from the carrier. *Id.* at ¶¶ 7–8. An additional phone line was installed on October 5, 2021. *Id.* at ¶ 9.

Defendants also submit the declaration of Sergeant Trieste Jenkins, the ARP/IGO Coordinator, who avers that Bridgeford did not file any grievance regarding the interruption in service to the CapTel phones. ECF No. 56-7 at ¶ 3. Jenkins provided logs of the grievances filed in May, June, and July 2021. ECF No. 56-8. In May 2021, Bridgeford filed grievances concerning his medication as well as his inmate finance account and in June 2021, he filed a grievance about a staff member. *Id.* at 1–2.

3

### C. Additional Motions

#### 1. Bridgeford's Motion I

Bridgeford's first motion asserts that DPSCS continues to violate the ADA. ECF No. 59 at 1. He asserts that on May 30, 2022, he "forwarded" nineteen pages of ADA issues, although it is unclear who was the recipient of that information. *Id.* The motion otherwise only contains a list of exhibits, and the exhibits themselves are not attached to the motion. As Bridgeford makes no request of the Court in this motion and the merits of his claim shall be addressed below, Motion I will be denied.

#### 2. Bridgeford's Motions II and III

In Motion II, Bridgeford states that he was transferred to MCIJ from Patuxent Institution on April 16, 2021, where he was assaulted, maced, and placed in segregation. ECF No. 60 at 1. He says he was not given any "ADA help" or mental health treatment. *Id.* Additionally, he complains that he has not received injections, diabetic shoes, or a follow up appointment related to a 2016 knee surgery. *Id.* at 2. Again, the motion does not make any request of the Court and Motion II will be denied. At best, it restates factual elements of the claim at issue in this case. The other issues raised are not properly before the Court and will not be addressed in the context of this case. *See* ECF No. 50 (Court Order explaining that "to the extent Bridgeford seeks to bring claims regarding his placement in segregation, these new claims will not be addressed in the context of this case" and noting that he may bring those claims in a new case).

In Motion III, Bridgeford reasserts his grievances against the medical contractor at MCIJ. ECF No. 61 at 1; *see* ECF No. 61-2 at 5. Additionally, he states that problems arise from deaf and hard of hearing inmates being housed with the general population inmates. *Id.* at 2. Bridgeford seeks damages related to these complaints. However, these issues are also not properly before the

4

Court, as the only outstanding issue in this case is Bridgeford's alleged denial of access to the CapTel phone at MCIJ. As such, Bridgeford's request for relief on these unrelated issues is denied.

### 3. Bridgeford's Motions IV and V

Motion IV, which again raises issues irrelevant to this case, also includes his response to Defendants' argument that his claim is unexhausted. ECF No. 62. Motion V similarly contains unrelated claims along with responses to arguments raised in Defendants' motion for summary judgment. ECF No. 63. Motions IV and V will be construed as responses to Defendants' motion for summary judgment, but will be denied to the extent they could be construed as motions.

### 4. Defendants' Motion for Extension of Time

Finally, Defendants requested an extension of time in which to file a reply to Bridgeford's responses, which shall be granted. ECF No. 64.

## II.  *Standard of Review*

Defendants argue that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) or that summary judgment should be granted in their favor pursuant to Fed. R. Civ. P. 56. ECF No. 56-1.

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Motions styled in this manner implicate a court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When a movant expressly captions its motion to dismiss "in the alternative" as one for

summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because Defendants filed their motion as a motion to dismiss, or in the alternative, for summary judgment, Bridgeford was on notice that the Court could treat the motion as one for summary judgment and rule on that basis. Accordingly, the Court will review Bridgeford's claim against Defendants under the Rule 56(a) standard and will consider the exhibits filed in support of the dispositive motion.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial."

*Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

The Court is mindful, however, that Bridgeford is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

### III.   Discussion

#### A.   Exhaustion of Administrative Remedies

Defendants are entitled to summary judgment in their favor given Bridgeford's failure to exhaust his administrative remedies prior to filing his Complaint. The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).

Exhaustion under § 1997e(a) is mandatory, and therefore a plaintiff must exhaust his available administrative remedies before a court can hear his claim. *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health*

7

*Servs., Inc.*, 407 F. 2d 674, 682 (4th Cir. 2005). Consequently, if Bridgeford has not properly presented his claim through an available administrative remedy procedure, the claim must be dismissed pursuant to the PLRA. *See Ross*, 136 S.Ct. at 1857.

To exhaust his administrative remedies, an inmate must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). A court will not dismiss a claim as unexhausted "if a prisoner, through no fault of his own, was prevented from availing himself of [an administrative remedy]." *Moore*, 517 F.3d at 725.

DPSCS has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against …official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

The ARP process consists of multiple steps. First, a prisoner must file an ARP with the warden within 30 days of the incident at issue. Md. Code Regs. § 12.02.28.05(D)(1) (requiring filing with the "managing official"); Md. Code Regs. § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); Md. Code Regs. § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the

Commissioner of Correction within 30 days. Md. Code Regs. § 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210; Md. Code Regs. § 12.07.01.05(B). Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. *See* Md. Code Ann., Corr. Servs. § 10-210(a).

Bridgeford's Complaint in this case, dated May 29, 2021, was received for filing by this Court on June 4, 2021. The parties do not dispute that, following the break in CapTel service, Bridgeford filed an ARP on June 7, 2021, nine days after the Complaint was dated and three days after it was received for filing. The parties, however, disagree regarding the contents of that ARP. In his opposition, Bridgeford asserts that the ARP he filed on June 7, 2021 against a staff member was related to his access to the CapTel phone. ECF No. 62 at 3; ECF No. 63 at 3. He further explains that he and another inmate—John Woodland—both filed ARPs on that date and that Sgt. Jenkins "shuffled" his ARP with Woodland's ARP to mislead Defendants' counsel. *See* ECF No. 62 at 2; ECF No. 56-8 at 2 (June 7, 2021 logbook entry for inmate "John Wood[l]and" complaining that "Captel phone inoperable"). Bridgeford also states that he filed an ARP regarding the CapTel issue on January 14, 2022. ECF No. 63-1 at 3. Defendants, on the other hand, contend that the record shows that Bridgeford did not file any ARPs concerning his inability to access the CapTel phone service.

However, regardless of the contents of Bridgeford's June 7, 2021 ARP, he failed to initiate and exhaust the administrative process *prior* to filing suit. As noted, neither party disputes that Bridgeford filed an ARP on June 7, 2021, after he filed suit in this Court. Nothing in the record shows Bridgeford filed an ARP regarding the lack of CapTel service prior to filing his complaint, and the ARPs filed after initiation of the Complaint cannot salvage his claim. Exhausting

9

administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds). In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Courts in this Circuit have consistently recognized this principle. *Kitchen v. Ickes*, Civ. No. DKC-14-2022, 2015 WL 4378159, at *8 (D. Md. July 14, 2015); *Miller v. McConneha, et al*, Civ. No. JKB-15-1349, 2015 WL 6727547, at *3–4 (D. Md. November 11, 2015); *see also Blackburn v. S. Carolina*, Civ. No. 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009) *aff'd*, 404 F. App'x 810 (4th Cir. 2010); *Kaufman v. Baynard*, Civ. No. 10-0071, 2012 WL 844480 (S.D.W. Va. Feb. 3, 2012) *report and recommendation adopted*, Civ. No. 10-0071, 2012 WL 844408 (S.D.W. Va. Mar. 12, 2012); *Miller v. McConneha, et al*, Civ. No. JKB-15-1349, 2015 WL 6727547, at *3–4 (D. Md. November 11, 2015). Therefore, as Bridgeford failed to exhaust the administrative remedies prior to filing this action, Defendants are entitled to summary judgment in their favor.

### B. Americans with Disabilities Act

Even if Bridgeford had exhausted his administrative remedies, his ADA claim fails. To establish a prima facie case under Title II of the ADA, the factual allegations must show that Bridgeford: (1) suffers from a disability; (2) was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) the exclusion, denial of benefits, or discrimination was by reason of the disability. *See Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502–03 (4th Cir. 2016) (citing

*Constantine v. George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 467 (4th Cir. 1999).

The "[d]iscrimination" barred by Title II includes "a failure to make reasonable modifications" that are "necessary" to provide a disabled individual with "full and equal enjoyment" of the facility's services. *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012). The term "reasonable accommodations," which is derived from the employment discrimination provisions of Title I of the ADA, is essentially synonymous with the term "reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services," 42 U.S.C. § 12131(2), which is what Title II of the ADA requires a public entity to provide. *See, e.g., Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1195 n.8 (10th Cir. 2007) ("Title II's use of the term 'reasonable modifications' is essentially equivalent to Title I's use of the term 'reasonable accommodation.'"); *McGary v. City of Portland*, 386 F.3d 1259, 1266 n.3 (9th Cir. 2004) ("Although Title II of the ADA uses the term 'reasonable modification,' rather than 'reasonable accommodation,' these terms create identical standards.").

A reasonable modification does not require the public entity to employ any and all means to make services available to persons with disabilities. *Constantine*, 411 F.3d at 488–89. Rather, the public entity is obligated to make those modifications that do not "fundamentally alter the nature of the service or activity of the public entity or impose an undue burden." *Bircoll v. Miami-Dade*, 480 F.3d 1072, 1082 (11th Cir. 2007); *see also Lamone*, 813 F.3d at 507–08 ("A modification is reasonable if it is 'reasonable on its face' or used 'ordinarily or in the run of cases' and will not cause 'undue hardship.'" (quoting *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012))); *Pashby v. Delia*, 709 F.3d 307, 323 (4th Cir. 2013).

Pursuant to regulations promulgated consistent with the ADA, a public entity must "take appropriate steps to ensure that communications" with disabled persons "are as effective as communications with others." 28 C.F.R. § 35.160(a). Furthermore, "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities ... an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1).

It is undisputed that Bridgeford has a disability. Additionally, the record shows that the CapTel phone service became unavailable to Bridgeford on May 25, 2021, denying him access to MCIJ's telephone services. However, during the month that the CapTel service was inoperable, Defendants provided a reasonable accommodation in light of the temporary outage to the CapTel system, as Bridgeford was provided with video visits to allow for continued access to communications and Bridgeford does not dispute that he had access to video visits during the brief time that CapTel was not available. As such, the Court finds that Defendants are entitled to judgment in their favor.

### IV. Conclusion

For the foregoing reasons, Defendants' motion, construed as a motion for summary judgment, (ECF No. 56) will be granted and judgment will be entered in Defendants' favor. Further, the Court denies Bridgeford's motions (ECF Nos. 59, 60, 61, 62, 63) and grants Defendants' motion for extension of time (ECF No. 64.)

Dated this _15_ day of _Feb._, 2023.

FOR THE COURT:

James K. Bredar
Chief Judge